MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Plaintiff,

v.

Jeannette A. ADCOCK, Defendant.

No. 97 C 1097.

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 8, 1997.

Terrence P. Canade, Matthew W. Rappleye, Lord, Bissell & Brook, Chicago, IL, Thomas J. Momjian, Michael J. Fortunato, Rubin & Assoc., P.C., Paoli, PA, for Plaintiff.

Linda D. Friedman, Peter S. Rukin, Leng, Stowell, Friedman & Vernon, Steven P. Gomberg, Ronald P. Kane, Gomberg, Kane & Fischer, Ltd., Chicago, IL, for Defendant.

## ORDER

ANN CLAIRE WILLIAMS, District Judge.

After carefully reviewing the extremely thorough and well-reasoned report and recommendation ("R&R") submitted by Magistrate Judge Morton Denlow, as well as the objections and original motion filed by defendant Jeannette A. Adcock, the court adopts the R&R in full, overrules the objections, and denies Adcock's motion to vacate order of dismissal.

## *REPORT AND RECOMMENDATION*

MORTON DENLOW, United States Magistrate Judge.

This case arises at the intersection of two important federal policies: 1) the remedial policy of Title VII to prevent the involuntary or uninformed compromise of federal rights, and 2) encouraging voluntary settlement of claims. Now before the Court is defendant Jeannette A. Adcock's ("Adcock") motion to vacate the stipulated dismissal order of March 4, 1997 which was entered pursuant to a negotiated settlement agreement. For the reasons stated below, Adcock's motion is denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Adcock's Employment at Merrill Lynch

Adcock began her employment with plaintiff Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch") as a secretary in 1980. She was promoted to financial consultant in 1987. At the time of her promotion, Merrill Lynch failed to procure a restrictive covenant employment contract, which Merrill Lynch customarily requires newly hired financial consultants to sign. She did receive Merrill Lynch's Compliance Outline for Financial Consultants and attended compliance meetings. The Compliance Outline provides in pertinent part:

K. Confidential Nature of Accounts

Client accounts shall be handled in a highly confidential manner. You should not discuss the business affairs of any client with anyone, including another employee, who does not need to know for proper business purposes.

No information or records concerning the business of Merrill Lynch and/or its clients may be released except to persons legally entitled to receive such. This includes confidential information requested during routine regulatory visits. When in doubt, consult compliance through your RVP/RM.

As a financial consultant at Merrill Lynch, she maintained over 600 accounts, representing approximately $40 million of assets with over $265,000 in commission revenues in 1996.

In July, 1995 Adcock complained of pregnancy discrimination to senior management at Merrill Lynch. Approximately one year later she complained of a hostile working environment. She never commenced any formal action against Merrill Lynch. Adcock contends that her employment record at Merrill Lynch was completely free of performance or other problems during her 17 years there. Merrill Lynch contends that Adcock made unauthorized trades in certain clients' accounts and then denied doing so.

### B. Merrill Lynch Terminates Adcock

Merrill Lynch fired Adcock on January 27, 1997. The same day Merrill Lynch terminated Adcock, unbeknownst to Adcock or her counsel, a class action suit alleging pregnancy and gender discrimination was filed against Merrill Lynch. Merrill Lynch claims they fired Adcock for improperly entering customer orders for roll-over investments prior to their becoming effective. Merrill Lynch also purportedly intended to issue a negative Form U–5 to Adcock which would substantially blemish Adcock's professional reputation.

Adcock obtained employment with Prudential Securities ("Prudential") as a financial advisor within a few days of her termination from Merrill Lynch. Merrill Lynch asserted claims against Adcock for theft of trade secrets. Steven P. Gomberg, an attorney hired jointly by Adcock and Prudential, responded by asserting claims against Merrill Lynch. He advised Merrill Lynch that Adcock's termination was retaliatory and discriminatory based on her previous discrimination complaints. Mr. Gomberg described with particularity Adcock's potential claims against Merrill Lynch for gender discrimination. Through Mr. Gomberg, Adcock also demanded a non-derogatory Form U–5.

## C. Pre–Litigation Settlement Negotiations

From late January through February 20, 1997, the parties engaged in extensive settlement negotiations. On February 11, Merrill Lynch forwarded two proposed settlement agreements to Adcock's counsel. On February 12, Adcock returned to Merrill Lynch approximately 620 pages of Merrill Lynch customer monthly statements. Merrill Lynch contends that those records contain confidential customer information. Adcock disputes this contention. During these negotiations, the parties discussed the fact that any settlement agreement must include a mutual release of all claims. However, Adcock initially refused to release her potential discrimination claims against Merrill Lynch.

## D. Merrill Lynch Files Suit

Because the parties failed to reach a settlement, Merrill Lynch filed a five-count verified complaint against Adcock on February 18 seeking injunctive relief and raising claims for breach of contract, conversion of trade secrets, breach of fiduciary duty and unfair competition. The next day, Merrill Lynch moved for a temporary restraining order supported by the ten-page affidavit of the Administrative Manager at Adcock's former Merrill Lynch office and a memorandum of law to prevent Adcock from soliciting Merrill Lynch customers. Adcock filed a brief and affidavit in opposition in which she raised a number of arguments including the conten-

tion that the litigation was designed to retaliate against her because she had raised questions regarding Merrill Lynch's maternity leave policy and hostile work environment. The Court heard oral argument on February 19 and set a ruling on the temporary restraining order for February 20, 1997 at 5:00 p.m. During the course of the oral argument, Adcock's counsel argued that Merrill Lynch was attempting to leverage its position in order to obtain a release of Adcock's potential employment claims.

## E. Settlement and Dismissal of Litigation

On February 20, 1997, before the Court ruled on the motion for a temporary restraining order, the parties entered into a settlement agreement. The settlement was the product of negotiations between the parties. The final document is substantially similar to the previous drafts with respect to the release of Adcock's Title VII claims. The recitals include the statement that the parties "intending to be legally bound, and in consideration of the mutual covenants and other good and valuable consideration" agreed to a number of points. Settlement Agreement, p. 1. The agreement contains a mutual release of all claims, including Adcock's potential discrimination claims:

> Merrill Lynch, on the one hand, and Adcock and Prudential, on the other hand, hereby mutually release each other ... from any and all legal, equitable or other claims ... which arise out of ... the employment and/or termination of employment of Adcock with Merrill Lynch and her subsequent affiliation with Prudential including without limitation, any and all claims or counterclaims for breach of contract, misappropriation of trade secrets, breach of fiduciary duty or the duty of loyalty, for wrongful or unlawful discharge, constructive discharge, violations of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §§ 2000e et seq., violations of the Illinois Human Rights Act, claims for violations of the Equal Pay Act, the Age Discrimination in Employment Act of 1967 ... and any other claims ... which have been, or could have been, asserted by any party hereto in any court,

arbitration, or other forum. Settlement Agreement, p. 2, ¶ 3.

The agreement also demonstrates that Adcock was represented by and had an opportunity to consult with counsel before agreeing to the settlement: "Adcock executes this agreement on her own behalf and represents that she has had an opportunity to consult with an attorney prior to signing this agreement." Settlement Agreement, p. 5, ¶ 11. The Settlement Agreement was a negotiated document which also contained certain exceptions to the release provisions, including "claims for any bonuses and/or monies, if any, earned prior to termination." Settlement Agreement, p. 3, ¶ 3.

Thereafter, pursuant to stipulation, an Order of Dismissal, with prejudice, was entered on March 4, 1997. Adcock then availed herself of her ability to freely solicit her Merrill Lynch clients on behalf of her new employer. In addition, this litigation and a companion NASD arbitration action were dismissed, with prejudice. As a result of the settlement and dismissal, no ruling was entered on Merrill Lynch's motion for a temporary restraining order.

### F. Rule 60(b) Motion

Forty-three days after execution of the Settlement Agreement, with no ensuing breach by either party, and thirty days after the dismissal was entered, Adcock moves to have the dismissal order vacated pursuant to Fed.R.Civ.P. Rule 60(b). She is now represented by new counsel, who had filed a class action lawsuit (96 C 3773) against Merrill Lynch on behalf of female employees.

Adcock argues that she entered the settlement agreement under duress based on three primary factors. First, she claims she reviewed the settlement agreement for only a few minutes before signing the document. Second, she felt financial pressure to enter into the settlement agreement in order to avoid the potential injunction which might adversely affect her families' economic welfare. Third, she was not aware that a class action lawsuit was pending in federal court in Chicago at the time she signed the settlement.

## II. STANDARD FOR RELIEF UNDER RULE 60(b)

Rule 60(b) relief is an extraordinary remedy and is granted only in exceptional circumstances. *Mares v. Busby,* 34 F.3d 533, 535 (7th Cir.1994). Adcock cites sections (b)(3), (4), and (6) in support of her motion. Rule 60(b)(3), (4), and (6) provide:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: * * * (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment is void; * * * (6) any other reason justifying relief from the operation of the judgment. * * *

To obtain relief under Rule 60(b)(3), a party must prove by clear and convincing evidence that: (1) the party maintained a meritorious claim at trial; and (2) because of the fraud, misrepresentation or misconduct of the adverse party; (3) the party was prevented from fully and fairly presenting its case at trial. *Provident Savings Bank v. Popovich,* 71 F.3d 696, 699 (7th Cir.1995).

To obtain relief under Rule 60(b)(4), the lower court must have acted without jurisdiction, or there must have been a contravention of due process of law. *See Wesco Prods. Co. v. Alloy Automotive Co.,* 880 F.2d 981, 984 (7th Cir.1989).

With respect to Rule 60(b)(6), the Seventh Circuit has pointed out "In a rule already limited in application to extraordinary circumstances, proper resort to this 'catch all' provision is even more highly circumscribed." *Provident Savings Bank,* 71 F.3d at 700. Relief under rule 60(b)(6) is appropriate only if the grounds asserted for relief do not fit under any of the other subsections of Rule 60(b). *Margoles v. Johns,* 798 F.2d 1069, 1073, n. 6 (7th Cir.1986).

### A. Adcock Lacks Standing Under Rule 60(b)

■ The first issue is whether Adcock has standing to bring a Rule 60(b) motion. Merrill Lynch contends that because Adcock

made no counterclaims to Merrill Lynch's complaint, she has nothing for this Court to reinstate. The Court agrees. In *United States v. Mt. Vernon Memorial Estates, Inc.,* 734 F.2d 1230, 1236 (7th Cir.1984), defendant's Rule 60(b) motion was denied because no cause of action remained to be reinstated as their counterclaim had been previously dismissed during trial. Similarly, Adcock has failed to file any counterclaims which might now be reopened, nor has she submitted a proposed counterclaim or other claim which now seeks to assert in this case. Therefore, having received a favorable dismissal with prejudice, Adcock lacks standing to bring this Rule 60(b) motion.

### B. Public Policy Supports the Enforcement of Settlements

■ Important federal policy encourages the voluntary settlement of claims. *See Pierce v. Atchison, Topeka and Santa Fe Railway Co.,* 65 F.3d 562, 572 (7th Cir.1995). Courts disfavor the disturbance of final judgments because litigants have an interest in the finality of decisions and "there must be an end to litigation." *Tolliver v. Northrop Corp.,* 786 F.2d 316, 318 (7th Cir.1986). "Judgments in civil cases fix the rights of parties and entitle them to go about their lives [and] may be reopened only for extraordinary reasons." *Margoles v. Johns,* 798 F.2d 1069, 1072 (7th Cir.1986). Courts do not easily disturb settlement agreements or vacate stipulated dismissal orders. However, the Court will continue to analyze Adcock's claim assuming that she has standing under Rule 60(b).

### III. SETTLEMENT OF CIVIL RIGHTS CLAIMS

#### A. Totality of Circumstances Test

■ Employees may waive their federal cause of action under Title VII as part of a voluntary settlement agreement. *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 52, 94 S.Ct. 1011, 1021, 39 L.Ed.2d 147 (1974). An employee's consent to the settlement agreement must be knowing and voluntary. *Id.,* 415 U.S. 36, 52 n. 15, 94 S.Ct. 1011, 1022 n. 15, 39 L.Ed.2d 147. Where a plaintiff is represented by counsel who actively negoti-

ates the release, Adcock must be found to have executed the release or settlement voluntarily and knowingly, unless vitiating circumstances such as fraud or duress existed to nullify her assent to the settlement. *Riley v. American Family Mutual Ins. Co.,* 881 F.2d 368, 374 (7th Cir.1989).

■ In considering whether the release of civil rights claims is valid under federal law, federal courts apply the "totality of circumstances" standard in order to protect the strong congressional policy against employment discrimination. *Pierce v. Atchison, Topeka and Santa Fe,* 65 F.3d 562, 571 (7th Cir.1995)("*Pierce I*"). Under this test, courts should consider, but are not limited by, the following factors:

(1) the employee's education and business experience; (2) the employee's input in negotiating the terms of the settlement; (3) the clarity of the agreement; (4) the amount of time the employee had for deliberation before signing the release; (5) whether the employee actually read the release and considered its terms before signing it; (6) whether the employee was represented by counsel or consulted with an attorney; (7) whether the consideration given in exchange for the waiver exceeded the benefits to which the employee was already entitled by contract or law; and (8) whether the employee's release was induced by improper conduct on the defendant's part.

*Id.* The totality of circumstances test does not alter the *Riley* holding to the effect that a party who executes a release pursuant to the advice of counsel or whose attorney actively negotiates the release is presumed to have executed the document knowingly and voluntarily absent claims of fraud and duress. *Id.* at 571 n. 1.

■ Because Merrill Lynch seeks to enforce Adcock's civil rights waiver, and because knowing and voluntary consent is a prerequisite for the waiver of a federal anti-discrimination claim, Merrill Lynch bears the burden of proving Adcock consented both knowingly and voluntarily to the settlement agreement. *See Pierce v. Atchison Topeka*

*and Santa Fe Railway Co.*, 110 F.3d 431, 438 (7th Cir.1997) ("Pierce II").

Merrill Lynch has met its burden. First, because Adcock was represented by counsel throughout the settlement negotiations, a presumption exists that the waiver was knowing and voluntary. *Pierce II*, 110 F.3d at 437. From Adcock's professional history, it is clear that she is educated and has business experience. Managing approximately $40 million for 600 accounts requires intelligence and business proficiency and expertise. Third, Adcock and Merrill Lynch conducted settlement negotiations over the course of several weeks. At all times she was aware that Merrill Lynch desired a release of the Title VII claims. Neither party disputes the clarity of the settlement agreement. While Adcock chose to sign the settlement agreement shortly after receiving it, she did have the opportunity to review substantially similar draft agreements during the weeks prior to February 20, 1997. She was aware that Merrill Lynch was insisting on a release of all claims. As she states in her affidavit: "Before going to court on February 19, 1997, Merrill Lynch's attorneys told me that Merrill Lynch would dismiss its lawsuit if I would agree to release any claims I had against the company." (Aff. ¶ 7). She read and understood what she was releasing when she signed the agreement after consulting with her attorney. Fifth, she received significant consideration. Merrill Lynch dismissed this litigation and a companion arbitration case with prejudice. Adcock was permitted to freely solicit her former clients without regard to Merrill Lynch's claims that she had taken trade secrets and breached her fiduciary duty. If Adcock believed she had done nothing wrong, she had the right to permit a decision on the motion for a T.R.O. She chose the safe course to avoid the risk and expense of litigation and has taken full advantage of the settlement. Finally, the release was not induced by any improper conduct on the part of Merrill Lynch. Merrill Lynch had the right to assert its claims against Adcock and she had the right to assert her claims against Merrill Lynch. The settlement put an end to the claims. Therefore, under the "totality of circumstances" test, the release of Adcock's Title VII claim is valid and enforceable be-

cause it was entered into voluntarily and knowingly.

**B. The Settlement Agreement Was Not the Product of Duress**

The next issue is whether Merrill Lynch's actions constituted duress placed on Adcock in order to void the settlement agreement and release. Duress is a defense to an otherwise valid contract. *Pierce I*, 65 F.3d at 569. Duress is characterized as "the taking of undue advantage of the business or financial stress or extreme necessities or weaknesses of another," as opposed to placing another in "a difficult bargaining position or the pressure of financial circumstances." *Id.* Duress is not a valid defense to a contract if the moving party had an alternative to signing the agreement. *Id.* (Movant's choice to remain in current position rather than resign negated any showing of duress even though he had only one day to accept a severance package and release). Furthermore, the fact that the settlement agreement now seems undesirable to Adcock is not grounds for relief *Smith v. Widman Trucking & Excavating, Inc.*, 627 F.2d 792, 795 (7th Cir.1980) ("The rule is not intended to enable litigants to avoid the consequences of a decision to settle or compromise which in retrospect appears unfortunate.").

Defendant Adcock had an alternative to signing the settlement agreement: not signing it and allowing Judge Zagel to decide the merits of Merrill Lynch's motion for a T.R.O. *Pierce I*, 65 F.3d at 569. Her choice negates any showing of duress. Furthermore, despite Adcock's belated contention that the motion completely lacked merit, Adcock must have recognized some modicum of merit to the suit, Merrill Lynch cited numerous authorities in support of its motion. Adcock was employed at Prudential. Merrill Lynch could not fire her. She was free to solicit her former clients. Merrill Lynch could not stop her unless Judge Zagel found that her conduct was illegal. The fact that a party may be found by a court to have engaged in illegal activity does not constitute duress. Like the movant in *Pierce,* Adcock was placed in a difficult bargaining position. She used her potential claims to create leverage

for her and Merrill Lynch used its claims to create leverage for it. That is the nature of litigation. The settlement represented a reasonable resolution of the dispute. The fact that she could choose whether or not to allow Judge Zagel to rule negates her duress claim.

■ The fact that the settlement agreement now feels unsatisfactory to Adcock is not grounds for relief. *See Smith,* 627 F.2d at 795. The true purpose of this motion is to allow Adcock to join the class action suit to which she was previously unaware. *See Brennan v. Midwestern United Life Ins. Co.,* 450 F.2d 999 (7th Cir.1971), *cert. denied,* 405 U.S. 921, 92 S.Ct. 957, 30 L.Ed.2d 792 (1972) (Movants not allowed to join class action suit under Rule 60(b) motion). However, Adcock was aware of her claims. She asserted them and voluntarily gave them up in the settlement. Merrill Lynch had no duty to advise Adcock of the pending class action suit. Furthermore, the fact that Adcock felt satisfied with the agreement and helped herself to its benefits for forty-three days before bringing this motion further undermines her duress argument. Although Adcock now portrays herself in an unfortunate position, she has failed to prove duress. Furthermore, having received the benefits of the bargain, Adcock cannot restore Merrill Lynch to its position as of February 20. The Court will not permit Adcock to eat her cake and have it too. Adcock has failed to justify relief under Rule 60(b)(3).

## IV. ADCOCK IS NOT ENTITLED TO RELIEF UNDER 60(b)(4)

■ As no party disputes the jurisdiction of this Court, the only question under Rule 60(b)(4) is whether there was a contravention of due process of law. Here, there has been no violation of due process in dismissing the case. The parties entered into a settlement agreement, stipulated to dismiss the case with prejudice, and the Court dismissed the case. No basis exists for relief under Rule 60(b)(4).

## V. ADCOCK IS NOT ENTITLED TO RELIEF UNDER 60(b)(6)

■ Relief under this subsection "is warranted only upon a showing of extraordinary circumstances that create a substantial danger that the underlying judgment was unjust." *Margoles v. Johns,* 798 F.2d 1069, 1073 (7th Cir.1986). Adcock's claim simply does not rise to the elevated showing of extraordinary circumstances required for relief under this section. Adcock may have had a difficult decision to make regarding the settlement agreement. Most settlements are difficult for litigants because they are compromising their claims and receiving less than they feel they deserve. The fact that she missed out on the opportunity to join the class action suit is unfortunate, however, she was aware of her claims and knew what she was giving up. She was represented by counsel. These circumstances are far from extraordinary. Therefore, relief under Rule 60(b)(6) is denied.

## VI. AN EVIDENTIARY HEARING IS NOT REQUIRED

■ No evidentiary hearing is required because Adcock has not made out a basis for Rule 60(b) relief as a matter of law. She lacks standing, she has made a knowing and voluntary waiver of her Title VII claim and her decision to settle prior to the ruling on the T.R.O. destroys her claim of duress. Furthermore, to require an evidentiary hearing would undermine the Settlement Agreement and the strong public policy which encourages voluntary settlements. As the Seventh Circuit has directed: "we should be careful not to create a legal environment in which it becomes so difficult for employers to establish the validity of waivers that they cease to have value ... Waivers will no longer be valuable, however, if employees, by repudiating them, can deny employers the benefit of freedom from litigation for which they have bargained." *Pierce II,* 110 F.3d at 437.

## VII. CONCLUSION

Adcock is a sophisticated business person responsible for assisting in the management of almost $40 million for 600 clients. She was represented by counsel and knowingly and voluntarily executed a Settlement Agreement which contained a mutual release of

claims. Hindsight is twenty-twenty. She now seeks to retain the benefit of her bargain while depriving Merrill Lynch of the benefit of its bargain. It is too late. Settling a case can always lead to second guessing. Adcock knew what she was doing at the time and is bound by that decision. Her decision may have been difficult, but it did not constitute duress. **Adcock's Rule 60(b) motion to vacate the March 4, 1997 dismissal order is denied.**