In the
United States Court of Appeals
For the Seventh Circuit

Nos. 00-1101 & 00-1505

ROSEMARY HIGBEE,

Plaintiff-Appellant,

v.

SENTRY INSURANCE COMPANY,

Defendant-Appellee.

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97 C 1349--James B. Zagel, Judge.

Argued March 30, 2001--Decided June 14, 2001

Before FLAUM, Chief Judge, and POSNER and
EVANS, Circuit Judges.

EVANS, Circuit Judge.  The district
courts in this circuit have crowded
dockets, and the judges presiding over
those courts work very hard to keep their
heads above water. To that end, district
judges are wise to encourage settlements
and to poke and prod reluctant parties to
compromise, especially when their
differences are not great and/or their
claims or defenses are not airtight. See
Pierce v. Atchison, Topeka and Santa Fe
Ry., 65 F.3d 562, 572 (7th Cir. 1995)
(encouragement of voluntary settlements
is an important federal policy). By the
same token, judges must resist the
temptation to dismiss a case prematurely
before a settlement has truly been
finalized. The question presented in this
case is whether the stellar district
judge, a pillar of the bench of the
Northern District of Illinois, yielded to
that temptation.

Rosemary Higbee filed the complaint
that began this litigation in February
1997, accusing her former employer,
Sentry Insurance Company, of sexual
harassment, age discrimination, and
retaliatory discharge. Higbee's first two
attorneys withdrew without completing
much discovery, and, as a discovery cut-
off approached, her third lawyer, William

Barasha, still had not taken even a single deposition of a Sentry witness. On the last day of discovery, Barasha filed a motion to vacate the discovery cut-off and, more importantly, to withdraw his appearance on behalf of Higbee due to what he said were irreconcilable differences with her. Barasha's motion was noticed for a hearing on April 2, 1998.

Higbee claims to have been shocked by Barasha's motion and to have become extremely distressed at the prospect of losing her attorney at such a late stage in the litigation. To ease her nerves, Higbee asked her friend Jeff Braiman, an attorney, to accompany her to the April 2 hearing on Barasha's motion. On that date, however, the district judge did not immediately address the noticed motion, but instead suggested that the parties retire to his chambers for an impromptu settlement conference. They were separated into two rooms, and the judge assumed the role of mediator, talking with each side privately. Eventually, Sentry's counsel, Janet Hedrick, obtained the approval she needed to offer $20,000 to Higbee. The judge presented this offer to Barasha, Braiman, and Higbee, but Higbee informed the judge that she had not calculated her damages and was not in a position to evaluate the offer. Nevertheless, at some point during the negotiation, the parties were all brought together to discuss other details of the proposed settlement. They were able to agree in principle that the settlement would include a general release of all claims by Higbee, a waiver by Higbee of any right to future employment with Sentry, a confidentiality and nondisparagement clause, and a provision that the parties would use their best efforts to effectuate the settlement. In addition, they drafted a letter of reference for Higbee from Sentry. At the conclusion of negotiations, the judge denied Barasha's motion to vacate the discovery cut-off and withdraw, and dismissed the case with prejudice. As the parties were leaving, Higbee asked the judge what would happen if the parties could not agree, and he stated, according to her, something to the effect of "If you cannot get it together, come back, and I will, of course, reinstate."/1

Higbee quickly came to the conclusion

that she wanted to press on with her case and claims to have informed Barasha of this decision a day or two after the conference./2 Barasha did not immediately share this information with Sentry, however, and on April 9, a week after the court appearance, Hedrick forwarded to him a draft settlement agreement incorporating the terms, as she understood them, agreed upon in the judge's chambers. Shortly thereafter, Barasha realized that Higbee had a worker's compensation claim that had not been discussed at the settlement conference and that she wished to have excluded from the release. Sentry agreed to this request, and on April 21 Barasha sent back a "counter-proposed release" reflecting this change. Sentry's in-house counsel, Brad Corbett, made minor revisions, then signed the agreement and sent it back to Barasha. According to Barasha, he thereafter spoke with Higbee, who proposed several further changes to the agreement, including adding names of specific Sentry employees to be bound by the nondisparagement clause and requiring Sentry to turn over a psychological report on Higbee prepared by its expert. Corbett orally assented to these modifications and then signed a revised draft of the agreement which Barasha forwarded for his approval on July 10. According to Higbee, Barasha had not yet consulted her about the language of the agreement, and when he finally faxed it to her on July 27 she found it unacceptable. Higbee instructed Barasha to demand the original psychological report (as opposed to the copy offered by Corbett), as well as additional sums for accrued vacation and work-related expenses, which she believed were not covered by the $20,000 payment. Sentry refused to make further concessions, Higbee refused to execute the draft agreement, and Barasha resigned as Higbee's counsel.

On March 29, 1999, Higbee's new counsel filed a motion under Federal Rule of Civil Procedure 60(b) to vacate the district court's order of dismissal and reinstate the case. The judge denied the motion and ordered that the agreement be enforced as memorialized in the July 10 draft. Higbee's motion to reconsider was denied. In a second motion to reconsider, Higbee asked that the case be transferred to another judge for a hearing on whether

a settlement agreement had been reached. The judge refused to transfer the case but held a hearing on November 9 and 10, 1999, during which he heard testimony from those present at the April 2 conference. After the hearing, the judge made oral findings of fact, followed by written conclusions of law. Although several minor issues were still unresolved at the conclusion of the April 2 settlement conference (such as the status of the worker's compensation claim and the language of the confidentiality clause), the judge held that they were immaterial because they were easily resolved during the negotiations that followed. As to the status of the psychological report, the court held that it was immaterial because it was not mentioned at the settlement conference and its disposition would be governed by state law. Accordingly, the judge reaffirmed his decision that the parties had entered a binding settlement agreement on April 2.

Contract law, which governs this case, requires a meeting of the minds on all material terms. Abbott Lab. v. Alpha Therapeutic Corp., 164 F.3d 385, 387 (7th Cir. 1999). The parties agree that some issues were resolved at the April 2 meeting, that some issues were left unresolved, and that Higbee subjectively believed that no binding agreement had been reached. A layman might think that these latter two facts preclude the possibility of a meeting of the minds, but any lawyer could tell you that a lack of agreement on minor, immaterial terms, and a party's subjective and unarticulated belief that she would not be bound by an oral agreement, do not preclude a finding that a contract has been formed. See Wilson v. Wilson, 46 F.3d 660, 666-67 (7th Cir. 1995) (unresolved immaterial terms do not prevent meeting of the minds); Abbott Lab., 164 F.3d at 387 ("'meeting of the minds' is determined not by [parties'] actual subjective intent, but by what they expressed to each other"). Thus, our inquiry must focus on whether Sentry and Higbee reached an agreement on all material terms of a settlement and whether Higbee's objective words and actions--quite apart from her subjective beliefs--indicated her assent to be bound.

The judge eventually found that three issues were left unresolved at the conclusion of the April 2 conference: (1) the status of Higbee's worker's compensation claim, (2) the language of the confidentiality and nondisparagement clause, and (3) the disposition of the psychological report on Higbee created by Sentry's expert. Although we don't presume to speak for Sentry, we think many defendants would agree that the most material term in any settlement agreement is the release, see Abbott Laboratories, 164 F.3d at 388, and, in a case involving multiple claims, which of those claims are covered by the release. Here, although the release discussed at the conference purported to waive all of Higbee's claims, the parties had not even discussed the worker's compensation claim. Indeed, Higbee's own attorney had "forgot[ten] all about that" until a day or two after the conference. Higbee obviously wished to preserve this claim,/3 but Sentry, at least at the conference, sought nothing less than a full waiver of all claims. Although Sentry subsequently agreed to exclude the worker's compensation claim from the release, this belated concession has no bearing on whether an oral settlement was reached on April 2./4

Similarly, the wording of the confidentiality and nondisparagement clause was a material term, at least as far as Higbee was concerned. During the negotiations, Higbee made it clear that she would not settle the case without such a clause, and it is undisputed that the conference adjourned without hashing out its details. Although a contract can be formed even though the precise language is not worked out and put into writing until sometime later, see, e.g., Wilson, 46 F.3d at 667, there must at least be some agreement as to what it will say. Here, the parties agreed on little more than the fact that the settlement agreement would contain a confidentiality and nondisparagement clause, and further negotiation was necessary to come to a specific agreement. Again, the fact that the parties eventually agreed, months later, on mutually satisfactory language is irrelevant.

Finally, getting her hands on the original psychological report was

material to Higbee and, judging from its post-conference stance on the issue, to Sentry as well. Clearly there was no agreement on the disposition of the report at the settlement conference, and the parties were not even able subsequently to come to a compromise. Sentry argues that Higbee's right to the report is governed by law independent of any settlement agreement, and thus failure to resolve the issue is not material. But the fact that Higbee might later be able to compel Sentry to release the report via judicial intervention does not diminish the value of obtaining it cost-free as part of a global settlement of all disputes between the parties. And even if some unidentified state law governs the disposition of the report, that law certainly would not prevent Sentry from voluntarily relinquishing it as part of a settlement. Alone, the parties' failure to dispense with the psychological report would not prevent a binding settlement, but combined with the lack of agreement on the worker's compensation claim and the confidentiality and nondisparagement clause, we think too much was left unresolved at the April 2 conference for the judge to find that a binding oral settlement agreement was reached. That finding, we reluctantly conclude, was clearly erroneous.

We note for completeness that even if Sentry had made a clear settlement offer filling all the holes we discussed, we are not certain that Higbee's words and actions sufficiently manifested her acceptance. In particular, we are concerned with her question to the judge and his response that "If you cannot get it together, come back, and I will, of course, reinstate." The judge explained after the evidentiary hearing that he was offering to reinstate the case only if the parties mutually agreed to rescind the settlement agreement. Although he is in the best position to know the meaning of his own statement, Higbee's question should have raised a red flag regarding her commitment to the settlement. And the judge's response only fueled her subjective belief-- objectively revealed by her question--that she had not yet entered a binding agreement.

Perhaps anticipating our ruling today, Sentry argues that even if no oral

contract was formed at the conference, the parties subsequently agreed to a written settlement via the exchange of draft agreements between Barasha and Corbett. There is no question that Barasha sent Corbett a revised draft of the settlement agreement on July 10 and that Corbett orally accepted this offer and later did so in writing. The parties dispute vigorously, however, whether Barasha had authority to make this offer, and settle the case, on behalf of Higbee. An attorney's authority to settle a lawsuit is entirely separate from his authority to represent a client in litigation and will not be presumed. Brewer v. National R.R. Passenger Corp., 649 N.E.2d 1331, 1333-34 (Ill. 1995). Sentry bears the burden of proof on this issue. Id. at 1334.

Sentry first asserts that Higbee expressly conferred authority on Barasha to settle the case, pointing to the judge's finding that Barasha discussed with Higbee the terms of the July 10 draft agreement before sending it to Corbett. But Higbee denies that Barasha consulted her, and this version of events is supported by the only available physical evidence--a July 27 fax from Barasha to Higbee of the July 10 draft agreement. Notably, Barasha did not send this draft to Higbee until 17 days after it had been accepted by Corbett and, upon receiving it, Higbee found it unacceptable and proposed extensive revisions. Barasha could come up with no other written correspondence between himself and Higbee during the post-settlement conference negotiations referencing the enclosure of any draft agreement or discussing any proposed terms./5 On these facts, we find it difficult to understand how the judge found that Higbee expressly authorized Barasha to settle.

Sentry also has a fallback position: even if Barasha lacked actual authority to settle the case on Higbee's behalf, he had apparent authority to do so. Sentry points out that Higbee permitted Barasha to negotiate for her at the conference, and even nodded as he agreed to certain terms. In addition, she sat silently as the attorneys agreed to later work out the details of the language of the agreement. Based on these facts, Sentry argues that Barasha's authority to settle

may be presumed and that it was reasonable for Sentry to indulge that presumption. See Szymkowski v. Szymkowski, 432 N.E.2d 1209, 1211 (Ill. App. Ct. 1982) ("the existence of the attorney of record's authority to settle in open court is presumed unless rebutted by affirmative evidence that authority is lacking").

The problem with Sentry's argument is that Szymkowski addresses an attorney's authority to settle in open court, in his client's presence. In that context, it is easy to presume that an attorney speaks for the client because the client is there and free to object if she disagrees with what is said. Id. A very different situation is presented here, where the alleged (written) settlement occurred outside of court, in the client's absence. Under these circumstances, we think it wise to revert to the general rule that an attorney's authority to settle will not be presumed. Brewer, 649 N.E.2d at 1333-34./6 Nothing in the record--other than Barasha's self-serving testimony--indicates that Higbee was ever prospectively aware of the terms of any offer made to Sentry or that she authorized Barasha to make any such offer. Accordingly, we decline Sentry's invitation to affirm on the alternative ground that the exchange of drafts between the attorneys formed a written contract.

We conclude by noting the obvious: Ms. Higbee seems to be a bit of a difficult plaintiff. Just the number of attorneys she has had in this case is vivid testimony to that fact. And we can certainly understand the desire that any judge would have to move a case like this off his docket. Nevertheless, for the reasons noted, we think Ms. Higbee did not agree to settle her case and so it should not have been dismissed. Accordingly, the judgment of the district court is REVERSED and the case is REMANDED for further proceedings. Circuit Rule 36 shall apply on remand.

FOOTNOTES

/1 Sentry's counsel represented at oral argument that this exchange took place at some point earlier in the negotiations, but the court's memorandum opinion and order states that it occurred at the conclusion of the settlement

conference. The proceedings in the judge's chambers were not transcribed, so we can only guess at the sequence of the conversation, but, given the context, we think it more likely that the judge made this statement at the conclusion of the negotiations.

/2 Barasha admits that he spoke to Higbee around this time but claims that she merely expressed her belief that she could withdraw from the settlement, not that she wished to do so.

/3 In addition, Higbee claims certain work-related expenses were not covered by the $20,000 offer. Although the judge specifically found that they were included in Higbee's "laundry list" of damages covered by the lump sum payment, Higbee's confusion on this point further illustrates that no meeting of the minds occurred.

/4 It is true, as Sentry argues, that the Illinois Workers' Compensation Act provides that a worker's compensation claim cannot be settled without the prior approval of the Illinois Industrial Commission. 820 ILCS 305/23. All the same, the Act would not have precluded an agreement between the parties that would have become effective only upon the approval of the Commission. Instead of trying to design such a settlement, the parties neglected to address the worker's compensation claim at all.

/5 Sentry points out that Barasha was no longer Higbee's counsel on the dates of the evidentiary hearing, so he no longer had access to the case file and therefore could not be expected to produce such correspondence. We consider it unlikely, however, that an attorney would fail to keep a separate file, independent of any case file, containing at least his outgoing correspondence.

/6 To the extent our conclusion conflicts with In re Marriage of Clarke, 550 N.E.2d 1220 (Ill. App. Ct. 1990), we reject that decision as inconsistent with the Illinois Supreme Court's subsequent decision in Brewer.