In the

# United States Court of Appeals

### For the Seventh Circuit

———————

No. 07-3028

LYDIA G. MAGALLANES,

*Plaintiff-Appellant,*

*v.*

ILLINOIS BELL TELEPHONE COMPANY,
WHICH IS A WHOLLY OWNED SUBSIDIARY OF
AT&T TELEHOLDINGS, INC., WHICH IS A WHOLLY
OWNED SUBSIDIARY OF AT&T, INC.,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 4626—**William J. Hibbler**, *Judge.*

———————

ARGUED APRIL 2, 2008—DECIDED JULY 23, 2008

———————

Before EASTERBROOK, *Chief Judge,* and BAUER and EVANS, *Circuit Judges.*

BAUER, *Circuit Judge.* This is the second time we have encountered this case on the same set of facts albeit in two separate records, leading us to a feeling, in the words of Yogi Berra, of "déjà vu all over again."

Lydia Magallanes has for several years attempted to bring her case to trial. She was thwarted once by her

first attorney, who settled her case without her authority. We reversed the district court judge's dismissal of the action and sent it back for trial. She now has been thwarted by a different district court judge, who also found that the parties had settled. Because we find that the second district court also abused its discretion in doing so, we reverse.

On August 12, 2005, Magallanes filed a lawsuit against SBC, and on September 26, 2005, she filed an amended complaint against Illinois Bell Telephone Company ("Illinois Bell"), seeking relief under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*; the Americans With Disabilities Act, 42 U.S.C. 12101, *et seq.*; and the Age Discrimination in Employment Act, 29 U.S.C. 621, *et seq.* Illinois Bell deposed Magallanes on November 4, 2005. Her attorney, Jonathan Goldman, apparently thought Magallanes did not fare too well at the deposition, and three days later, suggested that she consider settling her case. He noted that the costs of the lawsuit going forward, which would include further depositions and pleadings responding to summary judgment motions, would be substantial and would likely surpass the $7,500 retainer Magallanes had initially paid him. The remaining specifics of this conversation on November 7 are in dispute: Goldman testified that Magallanes then gave him the authority to settle the case for $20,000, while Magallanes testified that she reaffirmed her desire for a jury trial and never authorized a settlement.

On November 22, 2005, Goldman called Magallanes and made another pitch for settlement. Again, the parties disagree as to what happened: Goldman testified that Magallanes gave her the authority to settle the case for $10,000, while Magallanes testified that Goldman did

not ask for her authority to settle the case for any sum and she gave no such authority; she wanted to go to trial.

Meanwhile, Goldman was negotiating terms of a settlement with Illinois Bell's counsel, Kendra Allaband. After a series of offers and counteroffers in November, Allaband approved a $10,000 settlement on December 1, 2005. On December 2, 2005, Goldman sent a letter to Allaband confirming acceptance of the $10,000 settlement, and forwarded the letter to Magallanes. Allaband drafted a settlement agreement and mutual releases and sent them to Goldman. Magallanes refused to sign the release and settlement, and according to her, was furious that Goldman presumed to settle the case without her authority. She also refused to pay an additional retainer of $2,500 that Goldman had demanded following her deposition.

At a status conference on January 10, 2006, Goldman presented a motion to withdraw as counsel. Allaband objected, and moved to enforce a "settlement" between the parties which she claimed was negotiated on December 1, 2005. The district court denied the motion to withdraw as moot, and finding that the parties had settled, dismissed the case. Magallanes appealed, arguing that the parties had not reached a valid and enforceable settlement agreement. We agreed and reversed, finding that (1) there was no evidence that Magallanes knowingly and voluntarily consented to the settlement; (2) there was no evidence that Magallanes had authorized Goldman to settle under any terms; and (3) there was no evidence as to any of the settlement terms. *See Magallanes v. SBC*, 472 F.3d 923, 924 (7th Cir. 2006). We "remanded for reinstatement and, if necessary, a trial," applying Circuit Rule 36 in the process. *Id*. at 924.

Apparently our findings and instructions were not specific enough; on remand, the new district court judge conducted a hearing on Illinois Bell's motion to enforce the settlement supposedly negotiated on December 1, 2005. Finding that the parties had settled the case, the court dismissed the suit, and this appeal followed.

We review a district court's determination of whether parties entered into a valid and enforceable settlement agreement for abuse of discretion. *Dillard v. Starcon Int'l., Inc.*, 483 F.3d 502, 506 (7th Cir. 2007). We analyze not whether we agree with the district court's decision, but whether it was reasonable. *Magallanes*, 472 F.3d at 924 (citing *Hakim v. Payco-General Am. Credits*, 272 F.3d 932, 935 (7th Cir. 2001)).

Issues regarding the formation, construction, and enforcement of settlement agreements are governed by state contract law. *Sims-Madison v. Inland Paperboard and Packaging, Inc.,* 379 F.3d 445, 448 (7th Cir. 2004) (citing *Pohl v. United Airlines, Inc.*, 213 F.3d 336, 338 (7th Cir. 2000)). Under Illinois law, an attorney has no authority to settle a claim of the client absent the client's express authorization to do so. *Webster v. Hartman*, 195 Ill.2d 426, 433 n.1, 255 Ill. Dec. 476, 749 N.E.2d 958 (2001) (citing *Danziger v. Pittsfield Shoe Co.*, 204 Ill. 145, 149, 68 N.E. 534 (1903)); *Brewer v. National R .R. Passenger Corp.*, 165 Ill.2d 100, 105-106, 208 Ill. Dec. 670, 649 N.E.2d 1331. (1995). An attorney's authority to agree to an out-of-court settlement will not be presumed, and the burden of proof rests on the party alleging authority to show that fact. *Higbee v. Sentry Ins. Co.*, 253 F.3d 994, 1000 (7th Cir. 2001) (citing *Brewer*, 165 Ill.2d at 105-06; *Webster*, 195 Ill.2d at 433 n.1.

The second district court judge, after holding an evidentiary hearing, found that the parties properly negotiated

a settlement and had agreed to its terms. The court accepted Goldman's version of the facts concerning the settlement discussions, and found that Magallanes had authorized Goldman to settle the claims on her behalf. He observed that Magallanes had not signed the settlement documents because she likely suffered from "cold feet" and had second thoughts after she gave Goldman the authority to settle.

Magallanes argues that Illinois Bell did not meet its burden in showing that she gave Goldman the authority to settle her case. We agree. Other than Goldman's statements to the contrary, the record is devoid of an indication that Magallanes authorized him to settle the case. Magallanes has consistently stated that she never gave Goldman the authority to settle the case and never signed a document stating that she authorized Goldman to settle or that she agreed to settle. She never acted in a manner that would suggest that she wanted to settle or agreed with the terms of any proposed settlement. Nor does settling the case for $10,000 make much financial sense: she had already paid Goldman a $7,500 retainer and had other outstanding fees and costs. She stood to gain at most $2,500 and, as counsel for Illinois Bell suggested at oral argument, as little as $600. Little in the record suggests that she would abandon her lawsuit for such a sum.[1]

---

[1] Magallanes also suggests that Goldman had a financial disincentive to prolong the case, as he did not want to risk the additional fees involved in responding to summary judgment and proceeding to trial when his client had already declined to pay the additional $2,500 retainer. Illinois Bell rebuts this

(continued...)

Against this surfeit of evidence indicating that Magallanes wanted to proceed to a trial, Illinois Bell presented the testimony of Goldman. He testified that he sought and received her authority to settle the case for $20,000 on November 7, 2005 and for $10,000 on November 22, 2005; though he was not one hundred percent sure that Magallanes accepted the settlement and did not push for a jury trial on November 22. He also admitted that he attempted to get Magallanes to sign the settlement and release, but she refused; all of this was before us in the last appeal and is not enough to overcome Illinois Bell's burden of showing that Magallanes expressly authorized the settlement. It was unreasonable for the district court to hold that the set-tlement agreement was valid and enforceable, a posi-tion we expressly rejected in the first appeal of this case.

Even though we thought we were clear in our original resolution of the settlement issue, the second district court judge reopened the issue with an evidentiary hearing. What we expected—and ruled—was that this case should proceed to trial or come to some other resolution at the district court level. So we find—again—that the court abused its discretion in finding that Magallanes and Illinois Bell had reached a settlement. We remand for reinstatement; lest there be any lingering doubt as to

---

[1] (...continued)
accusation by noting that he actually could have continued to run up Magallanes's bill by prolonging the case. While this is true, the potential remained that at some point the well would run dry and Goldman's efforts would be unrewarded. Neither argument is particularly persuasive, so we will set the issue to the side.

our intent, this case must proceed to decision on the merits.[2]

---

[2] Because we find that Magallanes did not give Goldman the authority to settle her claim, we need not address her alternative argument that there was no meeting of the minds as to the specific terms of the settlement.

---