Vermont Superior Court
Filed 07/20/21
Washington Unit

VERMONT SUPERIOR COURTCIVIL DIVISION

Washington Unit                                          Case No. 408-12-20 Wncv
65 State Street
Montpelier VT  05602
802-828-2091
www.vermontjudiciary.org

| Corfman et al vs. Hooker Mountain Farm L3C et al |
| --- |

## ENTRY REGARDING MOTION

Title:          Motion to Enforce Motion to Enforce Settlement Agreement (Motion: 1)
Filer:
Filed Date:    June 04, 2021


The motion is GRANTED.


Plaintiffs' Motion to Enforce Settlement Agreement

Plaintiffs, four out-of-state residents, brought this suit to collect on loans they made to Defendant Hooker Mountain Farm L3C and its member-managers (collectively, HMF) in support of its development of a distillery business.  HMF solicited investments from the public, and Plaintiffs, in total, lent $45,000 which, they allege, was never paid back, with or without interest, after it became due.  They also allege that HMF failed to live up to other promises made in the investment materials.  As the parties commenced discovery, they engaged in settlement negotiations through counsel, all on e-mail.  Plaintiffs' position is that they arrived at an enforceable settlement agreement, but HMF since has attempted to back out.  Plaintiffs have filed a motion seeking an order enforcing the parties' agreement.  As to the status of the negotiations, the record consists almost exclusively of the complete e-mailed communications between the parties' lawyers.  Neither party has indicated any need to present additional evidence.  The parties have briefed the issues, and the court now determines as follows.

Plaintiffs' counsel e-mailed HMF's counsel on April 20, 2021, demanding $90,000 in settlement and asserting that consumer fraud claims, as well as interest, would bring the possible value of the case to $148,000 exclusive of attorney fees.  HMF's counsel e-mailed back on May 3, stating:

> My clients have given significant consideration to the unreasonable demand
> most recently proffered by your clients to resolve this matter.  My clients have
> decided to make one final, take or leave it, offer of $50,000 to resolve all claims
> between the parties.  This is a final offer and, if not accepted, my clients are

committed to using all of the resources they have marshalled (effectively the amount offered) to defend against the claims of your clients. This offer will remain open until close of business on May 14, 2021.

On May 10, 2021, Plaintiffs' counsel wrote, "My clients accept your clients' offer of $50,000 to resolve all claims between the parties. In the next day or so I will send over a settlement agreement that reflects that acceptance." HMF's counsel responded, "Thanks for letting me know. I will look for the agreement." Up to this point, the only settlement terms mentioned by the parties was the amount of HMF's payment in exchange for resolution of all claims.

Four days later, on May 14, 2021, HMF's counsel wrote: "Hey, I forgot to mention that my clients want to keep this settlement confidential. Can you include that in an agreement if you were not already intending to do so?" On May 17, Plaintiffs' counsel advised that the deal was set at $50,000 and did not include a confidentiality agreement but that Plaintiffs were willing to include that for an additional $10,000. The balance of the communication between counsel addressed their respective positions concerning the additional consideration and the confidentiality clause. HMF refused to pay the additional $10,000 and asserted that the deal was off.

Plaintiffs seek to have the court enforce the agreement at $50,000 without a confidentiality clause as agreed to on May 10.

HMF directs the court's attention to *Miller v. Flegenheimer*, 2016 VT 125, 203 Vt. 620, as controlling. That case, and the one it principally relies on, *Catamount Slate Products, Inc. v. Sheldon*, 20003 VT 112, 176 Vt. 158, require the court to consider whether, by the facts presented, viewed objectively, the parties intended to be bound by the terms of an oral or informal agreement, such as may appear in e-mails, that is sufficiently definite.

The risk involved, of course, is that if courts overzealously enforce preliminary agreements or negotiations as though they were final agreements, then adversaries' willingness to negotiate towards settlement may be stifled and discouraged. On the other hand, where agreements are sufficiently definite as to be enforceable, the contract law of offer and acceptance applies. As *Miller* explains:

> Here, whether the series of e-mails constituted an enforceable contract or—instead—a preliminary agreement depends on two factors: the parties' intent to be bound and the definiteness of terms in the communications between the parties. We therefore begin our analysis by examining whether the parties intended to be bound by their e-mails. In doing so we recognize the paramount right of each party to determine the exact moment at which it becomes bound to an agreement. This consideration is born out of the "primary concern for courts in such disputes . . . to avoid trapping parties in surprise contractual obligations that they never intended."

*Miller,* 2016 VT 125, ¶ 13 (citations omitted). *Catamount Slate* adopts a 4-part test to help evaluate whether a preliminary agreement only is at issue or whether the material terms of an agreement were resolved: ''(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.'' *Id*. ¶ 17. The trial court had found that e-mails between business co-owners addressing a buy-out of one by the other were sufficient to infer an enforceable agreement. However, the Supreme Court reversed, finding that by the terms of the e-mails, a more specific and complete agreement contemplating such things as non-competition and confidentiality were left undetermined and were material to the deal.

Here, there was no express reservation of the right not to be bound in the absence of a writing or any other condition. There was mention between the parties of a settlement agreement being drafted by Plaintiffs' counsel, but Plaintiffs' counsel proposed to do that simply to reduce to writing Plaintiffs' acceptance of HMF's $50,000 offer. In fact, by HMF's own words, the $50,000 offer was to resolve *all* issues between the parties.

There has been no partial performance of the settlement. Thus, all parties remain in their pre-settlement position. While the lack of partial performance does not assist Plaintiffs' showing, this is not a significant issue in the context of this case.

Settlement of most lawsuits are committed to writing, although sometimes not complex ones, as the law has a whole set of rules concerning the resolution of litigated claims and their finality. Given the simplicity of the matter being settled, this also is not a significant issue in this case.

The closer call is whether all the material terms of the contract were in fact agreed upon. The court refers back to the nature of the complaint—a complaint for debt and related statutory violations resulting in a dollar claim. This is unlike *Miller,* where there was much to be done to get the parties' affairs separated. There, they had a business deal requiring much more than just a dollar amount. Here, no confidentiality clause had ever been mentioned prior to offer and acceptance, and there would be no reason to infer the need for one. HMF proposed the dollar amount, said nothing about other terms, much less a confidentiality agreement, and Plaintiffs accepted. The case is no less settled without it a confidentiality arrangement.

The court concludes that this agreement to settle without a confidentiality clause was sufficiently definite to enforce. HMF offered it and Plaintiffs accepted on the terms offered. "The materiality of additional . . . terms introduced after an oral agreement is reached is not established simply by one party's intransigence." *Dillard v. Starcon Intern., Inc.*, 483 F.3d 502, 508 (7th Cir. 2007); see also *Platcher v. Health Professionals, Ltd.*, 549 F.Supp.2d 1040, 1044 (D. Ill. 2008) ("[I]f a defendant wishes to tack on a confidentiality agreement and argue that the term is material long after a final agreement is reached on the settlement amount, then the

defendant must have at least [discussed] the proposed confidentiality agreement during negotiations.").  Plaintiffs are entitled to judgment in the amount of $50,000.

Order

Plaintiffs' motion to enforce is granted.  Plaintiffs' counsel shall submit a form of judgment.  V.R.C.P. 58(d).

Robert R. Bent,
Judge