NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 25, 2021[*]
Decided August 26, 2021

**Before**

DIANE S. SYKES, *Chief Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 21-1875

| | |
|---|---|
| LYNNARDIO DEAN, <br>     *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 20 cv 00235 |
| REM STAFFING, <br>     *Defendant-Appellee*. | Mary M. Rowland, <br> *Judge*. |

**O R D E R**

REM Staffing, a temp agency, sent Lynnardio Dean an email confirming an oral offer to settle his race-discrimination claim for $550. Dean's response email said, "Yes, I accept." Still, when REM later sent him a formal release on paper, he did not sign it and instead filed a Title VII action in federal court. On REM's motion to enforce the email

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

agreement, the district court dismissed Dean's federal lawsuit. Because Illinois law made the agreement binding as soon as Dean emailed his acceptance—regardless of his refusal to sign any later papers—and because Dean has not established any ground for escaping the agreement, we affirm.

Dean, who is black, alleges that on at least one day, managers at REM in Forest Park, Illinois, steered assignments away from him and toward workers of other races; and, he says, REM paid the other temps, but not him, for time spent awaiting work.

After Dean filed discrimination charges with Illinois and federal agencies, he and REM's Illinois-based attorney talked by phone about settling the claim. REM's attorney followed up by email: "Please accept this email as confirmation of your agreement to accept $550 to resolve all claims against REM Staffing." Dean's response—"Yes, I accept"—came ten minutes later. REM then sent Dean a release form on paper.

But instead of signing the paper and collecting the money, Dean filed this federal anti-discrimination suit. REM countered with a motion to dismiss, citing the email agreement. Dean then argued that $550 was too low a sum, that REM somehow tricked or coerced him into sending the email response, and that his refusal to sign the paperwork made any email agreement unenforceable. The district judge dismissed the action, concluding that Dean's regret about the sum did not void the agreement, the agreement was voluntary, and Illinois law made it enforceable as soon as Dean accepted it by email—even if he later refused to sign the follow-up paperwork.

Dean's opening appellate brief cites no legal authority, *cf.* FED. R. APP. P. 28(a)(8)(A), but we can glean the substance of his arguments. None has merit.

First, Dean contends that his refusal to sign the formal release voids the prior email agreement. But settlement agreements are governed by state law, and Illinois does not even require that they be in writing—let alone that they be signed on paper. *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 507 (7th Cir. 2007). (Neither party suggests that any other state's law would apply here.) And these agreements depend on the parties' objective acts, not on subjective intent. *Id.*; *see Trapani Constr. Co. v. Elliot Grp., Inc.*, 64 N.E.3d 132, 143 (Ill. App. Ct. 2016). Here, REM's email constituted the essential terms of an offer to settle Dean's claims: he would relinquish all claims against REM in exchange for $550. And Dean's email response, read objectively, accepted the offer, thus rendering the agreement enforceable. No other interpretation is plausible.

And once the agreement became enforceable, Dean's refusal to sign a formal release did not void it. Unless the terms of an agreement tie enforceability to the follow-up paperwork, refusal to complete such paperwork does not undo the prior agreement. TAMMY E. HINSHAW, 11 ILLINOIS LAW & PRACTICE: COMPROMISE & SETTLEMENT § 12 & n.4 (2021) (citing *Lampe v. O'Toole*, 685 N.E.2d 423, 425 (Ill. App. Ct. 1997)).

Second, Dean asserts that there was no subjective "meeting of the minds." The phrase "I accept," he says, was meant to communicate only his "acceptance" (i.e., his receipt) of REM's email, not his acceptance of the underlying offer. Yet in Illinois, "meeting of the minds" is a term of art that refers not to the parties' subjective intent, but instead to their objective manifestations of agreement. *Dillard*, 483 F.3d at 507. And a party's unilateral mistake cannot undo a settlement agreement. *Kim v. Alvey, Inc.*, 749 N.E.2d 368, 378 (Ill. App. Ct. 2001). Here, Dean's idiosyncratic interpretation of the phrase "I accept" is not objectively reasonable and thus does not control.

Third, Dean says, in broad strokes, that REM's counsel tricked or coerced him during settlement negotiations. And to be sure, federal law requires that agreements to settle federal employment-discrimination claims be knowing and voluntary. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 716 (7th Cir. 2009). But the party seeking to evade the agreement must provide specific facts that would render the agreement unknowing or involuntary. *Id.* Dean did not do so in the district court. And on appeal he offers no details that could warrant a remand to enlarge the record.

Finally, Dean asks us to withhold ruling and recruit counsel to help him develop his appellate arguments. But this case is not complex, the record is straightforward, and an attorney is not necessary to resolve the issues—so we deny the request. *See Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc).

AFFIRMED